**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JEWELERS MUTUAL INSURANCE          )
COMPANY,                           )
                                   )
          Plaintiff,               )
                                   )
          v.                       )     No. 12 C 8730
                                   )
JILCO, INC., d/b/a J.N.            )
COSTELLO JEWELERS,                 )
                                   )
          Defendant.               )

## MEMORANDUM OPINION

Before the court are the parties' cross-motions for summary judgment. For the reasons explained below, we grant the plaintiff's motion and deny the defendant's motion.

## BACKGROUND

Defendant Jilco, Inc., d/b/a J.N. Costello Jewelers ("Costello"), operates two retail jewelry stores, one in Naperville, Illinois and the other in Glen Ellyn, Illinois. (Def.'s Stmt. of Undisputed Facts ("Def.'s Stmt.") ¶ 5.) Plaintiff Jewelers Mutual Insurance Company ("Jewelers") issued an insurance policy insuring Costello against certain losses. (Id. at ¶ 29; see also Policy No. 907403, attached as Ex. 1 to Compl. (the

"Policy").)[1]  While the Policy was in place Costello kept gold — in the form of "bullion," "ingots," and/or "bars"[2] — in a safe located at its Glen Ellyn store.  (Id. at ¶ 6.)  Costello also kept quantities of "scrap gold" on the premises, which Costello purchased from its customers and then had refined into "bullion," "ingots," and/or "bars."  (See id. at ¶¶ 7-8.)  On October 4, 2011, a Costello employee discovered that gold bars were missing from the company's safe.  (Id. at ¶ 12.)  Joseph Costello, Costello's owner and president, reported the matter to the Glen Ellyn Police Department.  (Id. at ¶ 14.)  In the course of their investigation, Glen Ellyn police officers reviewed security-camera footage showing that Costello's manager, Daniel Knaack, removed an item from the safe on September 29, 2011.  (Id. at ¶ 23.)  They issued a warrant for Knaack's arrest on April 2012, and he turned himself in later that same month.  (Id. at ¶¶ 26-27.)

The criminal case against Knaack was still pending when the parties filed their opening summary-judgment briefs.  (See id. at ¶ 28.)  Unable to depose Knaack, Costello attempted to establish

---

[1]  The parties periodically renewed the Policy for one-year terms. (Def.'s Stmt. ¶ 29.)  They executed new "Renewal Declarations" for each one-year term, (see Compl. at Exs. 1-3), but it appears that the Policy's terms remained the same from year-to-year.  For the sake of efficiency and clarity, we will cite the Policy in place during the first relevant policy term (7/29/2009 to 7/29/2010) and refer to particular sections within the Policy by docket page number (e.g., "Dkt. #1-1, p.48 ("Optional Coverages").

[2]  Costello uses these terms interchangeably.  (See, e.g., Def.'s Stmt. ¶¶ 7-8, 13, 16, 16-19, 22-23, 54, 61, 66.)  As we discuss later, the parties effectively agree that this gold constituted "bullion" under the Policy.

his conduct using police reports and an affidavit from Joseph Costello. This drew a host of evidentiary objections from Jewelers Mutual. (<u>See</u> Def.'s Mem. at 11-14.) We later gave Costello leave to supplement the record with an affidavit from James Monson, the Glen Ellyn police officer responsible for the investigation. (<u>See</u> Minute Entry, dated May 7, 2013, Dkt. # 27.) In response to Monson's affidavit, Jewelers Mutual withdrew its argument that Costello had not presented admissible evidence establishing that a theft had occurred and that Knaack was the culprit. (<u>See</u> Pl.'s Reply at 2.) But it continued to object that Costello had not submitted admissible evidence establishing when the thefts occurred and how much gold Knaack stole. (<u>See</u> <u>id.</u> at 9-15.) After briefing was complete, Knaack was convicted and we gave Costello leave to take his deposition in prison. (<u>See</u> Def.'s Motion to Depose Knaack, Dkt. # 32; Minute Entry, dated Sept. 23, 2013, Dkt. # 34.) He confirmed in his deposition that he stole gold bars and gold scrap from Costello on multiple occasions between April 2010 and February 2012. Knaack testified that after removing gold from Costello's safe, he would promptly sell the gold to a pawn shop named Westlake Coin. (<u>See</u> Knaack Dep., attached as Ex. 1 to Def.'s Supp. Brief, at 8-10, 14; <u>see</u> <u>id.</u> at 10 (testifying that he would retain the stolen gold for no more than three days before selling it to Westlake Coin).) He could not independently recall the details of specific thefts, but he was able to confirm approximate

dates and amounts using police reports, which were in turn based
upon his bank-deposit records and Westlake Coin's purchase records.
(See id. at 13-17, 34-43.)  The approximate dates and sale prices
are as follows:

| Approx. Date of Theft | Scrap or Bar | Sale Price |
|---|---|---|
| Apr. 7, 2010 | Scrap | $520.00 |
| Apr. 13, 2010 | Scrap | $709.00 |
| Apr. 23, 2010 | Scrap | $1,225.60 |
| Apr. 27, 2010 | Bar (2) | $18,000.00 |
| Sept. 1, 2010 | Bar (1) | $8,902.00 |
| Sept. 8, 2010 | Bar (2) | $16,680.00 |
| Mar. 4, 2011 | Scrap | $1,302.00 |
| Mar. 14, 2011 | Scrap | $920.60 |
| Mar. 16, 2011 | Bar (1) | $9,800.00 |
| Apr. 8, 2011 | Bar (1) | $10,250.00 |
| May 2, 2011 | Scrap | $1,747.50 |
| May 6, 2011 | Scrap | $852.00 |
| May 18, 2011 | Scrap | $648.00 |
| May 21, 2011 | Bar (1) | $10,250.00 |
| June 3, 2011 | Bar (1) | $10,650.00 |
| June 28, 2011 | Scrap | $7,117.00 |
| Aug. 2, 2011 | Scrap | $2,000.00 |
| Aug. 13, 2011 | Scrap | $1,000.00 |
| Aug. 16, 2011 | Scrap | $724.00 |
| Aug. 19, 2011 | Scrap | $410.00 |

| Approx. Date of Theft | Scrap or Bar | Sale Price |
|---|---|---|
| Aug. 22, 2011 | Bar (3) | $26,300.00 |
| Sept. 12, 2011 | Scrap | $1,000.00 |
| Sept. 29, 2011 | Bar (1) | $11,000.00 |
| Jan. 2, 2012 | Scrap | $465.00 |
| Jan. 9, 2012 | Scrap | $1,551.50 |
| Jan. 11, 2012 | Scrap | $1,417.00 |
| Jan. 13, 2012 | Scrap | $500.00 |
| Jan. 16, 2012 | Scrap | $1,700.00 |
| Jan. 17, 2012 | Scrap | $600.00 |
| Jan. 18, 2012 | Scrap | $800.00 |
| Jan. 24, 2012 | Scrap | $1,000.00 |
| Jan. 25, 2012 | Scrap | $1,026.00 |
| Jan. 30, 2012 | Scrap | $1,000.00 |
| Feb. 3, 2012 | Scrap | $1,000.00 |
| Feb. 6, 2012 | Scrap | $1,000.00 |
| Feb. 8, 2012 | Scrap | $500.00 |
| Feb. 10, 2012 | Scrap | $900.00 |
| Feb. 13, 2012 | Scrap | $1,000.00 |
| Feb. 15, 2012 | Scrap | $1,200.00 |
| Feb. 17, 2012 | Scrap | $500.00 |

(See id. at 34-43.)[3]  Prior to Knaack's deposition, Jewelers Mutual
speculated that a third party might have stolen the gold.  (See
Pl.'s Stmt. of Add'l Facts ¶¶ 2-5 (citing the store's lax security
and speculating that "contractors" and/or "construction workers" on
the premises had the opportunity to commit the theft).)   This
speculation is insufficient to create a material dispute of fact
about the thief's identity.  See McDonald v. Village of Winnetka,
371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported
by only speculation or conjecture will not defeat a summary
judgment motion.").  Jewelers Mutual also speculates that Knaack
may have sold some gold to Westlake Coin stolen from another
source.  (See Pl.'s Stmt. of Add'l Facts ¶¶ 12-17.)  Knaack denies
doing so, (see Knaack Dep. at 44), although there are still a few
loose ends.  The owner of Westlake Coin told the Glen Ellyn police
that he purchased certain items from Knaack that Costello has not
reported missing.  (See Pl.'s Stmt. of Add'l Facts ¶¶ 13-15
(stating that the owner purchased "10 to 15 Irish Claddagh rings,"
a gold coin, and gold "sproos" — materials left over from the gold
casting process).) Jewelers Mutual asks us to infer from these

---

[3]   During Knaack's deposition, plaintiff's counsel objected that his
testimony lacked foundation because he could not independently recall details.
(See Knaack Dep. at 35.)  But it has not cited any evidence tending to refute the
accuracy of the police reports, the underlying documentation, and/or Knaack's
testimony about his *modus operandi* (i.e., selling gold to Westlake Coin within
a few days after removing it from Costello's safe).  That evidence, taken
together, supports the conclusion that Knaack stole gold on or about the dates
indicated in the table.

sales that Knaack was stealing from other victims. (<u>See, e.g.</u>, <u>id.</u> at ¶ 13.) That may be, but this speculation is insufficient to create a material factual dispute regarding the gold that Knaack *admits* stealing from Costello.

On May 4, 2012, Costello submitted a proof of loss to Jewelers Mutual claiming a $220,000 loss. (<u>See</u> Def.'s Stmt. ¶¶ 46-47.) On September 10, 2012, Jewelers Mutual paid Costello $50,000 without admitting liability and gave Costello additional time to amend its proof of loss. (<u>Id.</u> at ¶ 53.) Costello submitted an amended proof of loss on October 8, 2012 claiming $178,167.50 ($208,167.50 ("gold or gold bars") plus $20,000 ("misc. scrap gold"), less Jewelers Mutual's $50,000 payment). Jewelers Mutual has filed a one-count declaratory judgment complaint claiming that it "owes no coverage or obligation to" Costello. (<u>See</u> Compl. at 10.) Costello has filed a three-count counterclaim seeking: (1) a declaration that the Policy covers the claimed losses (Count I); (2) damages for breach of contract (Count II); and (3) attorneys' fees for bad faith denial of coverage pursuant to 215 ILCS 5/155 (Count III).

## DISCUSSION

### A. Legal Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c).  In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999).  "Summary judgment should be denied if the dispute is 'genuine':  'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question."  McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

**B.    Whether the Policy Covers Bullion Theft by an Employee**

In construing the Policy, "our primary objective is to ascertain and give effect to the parties' intentions as expressed by the words of the policy."  Grinnell Mut. Reinsurance Co. v. Haight, 697 F.3d 582, 585 (7th Cir. 2012) (citing Rich v. Principal Life Ins. Co., 875 N.E.2d 1082, 1090 (2007)).  "As with any contract, we construe an insurance policy according to the plain and ordinary meaning of its unambiguous terms."  Id. (citations omitted).  "Where a policy provision is ambiguous, Illinois courts liberally construe it in favor of coverage."  Id.  "The court will find an ambiguity 'where the policy language is susceptible to more

than one reasonable interpretation,' and not simply where the parties disagree as to the policy's meaning." Netherlands Insurance Company v. Phusion Projects, Inc., — F.3d —, 2013 WL 6576515, *3 (7th Cir. 2013) (slip. op.) (quoting Founders Ins. Co. v. Munoz, 930 N.E.2d 999, 1004 (Ill. 2010)).

Under "Coverage B," the Policy insures "business personal property" located in Costello's stores. (See Policy, Dkt. #1-1, p. 32 ("Coverage B — Business Personal Property").) Although "business personal property" is not defined, gold in any form clearly falls within that phrase's plain meaning. However, the Policy expressly limits coverage for precious metals and related property. "[B]ullion" is specifically excluded under the heading "PROPERTY NOT COVERED." (See id. at 33 ("Property Not Covered") ("'We' do not cover bullion.").) Jewelers Mutual cites authorities defining "bullion" as "uncoined gold or silver in the mass considered as so much metal without regard to any value imparted to it by its form." Jarrell-Ash Co. v. U.S., 278 F.Supp. 658, 660 (Cust. Ct. 1968); see also U.S. Smelting Refining & Mining Co. v. Aetna Cas. & Sur. Co., 372 F.Supp. 489, 496 (S.D.N.Y. 1974) ("'[B]ullion' at the very least encompasses any solid mass of uncoined gold or silver whatever its shape so long as its shape does not enhance its value."). Costello does not object to this definition, and implicitly concedes in its response to the plaintiff's motion that the "gold or gold bars" that it claims in

its proof of loss are "bullion." (See Def.'s Resp. at 4-5.) The

"PROPERTY NOT COVERED" section also includes the following

exclusion:

> **Jewelry, Watches, Jewels, Pearls and Precious Stones, and
> Metals** — "We" do not cover jewelry, watches, watch
> movements, jewels, pearls, precious and semiprecious
> stones, gold, silver, platinum and other precious alloys
> or metals whether owned by "you" or someone else <u>except
> under the employee dishonesty coverage</u>.

(Policy ("Change Endorsement Jewelry Exclusion," Dkt. #1-2, p. 19

(emphasis added).)  The "employee dishonesty coverage" appears in

a separate section entitled "OPTIONAL PROPERTY COVERAGES."  (See

Policy, Dkt. # 1-1, at 48.)  The first paragraph under "OPTIONAL

PROPERTY COVERAGES" states as follows,

> If indicated as applicable on the 'declarations,' the
> following Optional Property Coverages also apply.  All
> Optional Property Coverages are subject to all of the
> 'terms' applying to the Common Policy Conditions and
> Property Coverages of this policy, except as provided
> below.

(<u>Id.</u> at 48.) The Policy then lists five optional coverages: (1)

"Employee Dishonesty;" (2) "Exterior Glass;" (3) "Interior Glass;"

(4) "Money and Securities;" and (5) "Outdoor Signs." (<u>Id.</u> at 48-

49.)  The "Employee Dishonesty" section includes coverage for loss

or damage to "business personal property, including 'money' and

'securities,'" caused by an employee's "dishonest acts." (<u>Id.</u> at

49.)  The "Money and Securities" coverage insures "'money' and

'securities,' <u>bullion</u>, and lottery tickets" from loss or damage

caused by "theft," among other things.  (<u>Id.</u> at 51 (emphasis

added).)  This coverage is expressly subject to the "Criminal,
Fraudulent, or Dishonest Acts" exclusion, which excludes coverage
for employee theft.  (<u>See</u> <u>id.</u> ("Under Additional Exclusions only
the following items apply to this Optional Property Coverage . . .
4) Criminal, Fraudulent, or Dishonest Acts . . . ."); <u>see also</u> <u>id.</u>
at 41 ("Criminal, Fraudulent, or Dishonest Acts:" "[T]heft by
employees is not covered by this policy.").)

     As an initial matter, the parties disagree about whether
Costello purchased "Money and Securities" coverage.  Costello
stated in its opening brief that it did purchase such coverage,
although it did not cite record evidence supporting that
contention.  (<u>See</u> Def.'s Mem. at 4.)  Jewelers Mutual initially
conceded the point, calling it an "undisputed" (but irrelevant)
fact.  (<u>See</u> Pl.'s Resp. at 4 ("Again, Costello fails to connect
this undisputed fact to any argument regarding the entirely
separate Employee Dishonesty coverage.").)  It then reversed course
in its reply brief, arguing for the first time that Costello did
not purchase this optional coverage because the Renewal Declaration
mentions only "Employee Dishonesty" coverage.  (<u>See</u> Pl.'s Reply at
4 ("Costello chose to purchase the Employee Dishonesty coverage,
but chose not to purchase the optional coverage for Exterior Glass,
Interior Glass, Money and Securities or Outdoor Signs."); <u>see also</u>
Policy, Dkt. # 1-1, p. 48 ("If indicated as applicable on the
'declarations,' the following Optional Coverages also apply."); <u>id.</u>

at p. 8 (listing only "Employee Dishonesty" under the heading
"Optional Property Coverage").) Jewelers Mutual waived this
argument by raising it for the first time in its reply brief. <u>See</u>
<u>Nationwide Ins. Co. v. Central Laborers' Pension Fund</u>, 704 F.3d
522, 527 (7th Cir. 2013) (arguments raised for the first time in a
reply brief are waived). Even if it had not waived the argument,
we agree with Costello that it did purchase "Money and Securities"
coverage for the relevant time period. Although the Renewal
Declaration does not specifically mention that coverage, it does
refer to a separate "Optional Coverage Package" on a table of
"Coverage Forms and Endorsements." (<u>See</u> Policy, Dkt. #1-1, p. 13.)
The Optional Coverage Package states that Costello had "Money and
Securities" coverage of up to $25,000 at each store. (<u>See</u> Policy,
Dkt. #1-2, p. 5-6 ("Coverage for Money and Securities *is provided*
up to the 'limit' shown on the Optional Coverage Package Schedule
and is subject to the provisions found in Item 4., Money and
Securities, of the Optional Property Coverages section.") (emphasis
added).) So, even though the Renewal Declaration does not
specifically mention "Money and Securities," the parties clearly
intended to create such coverage. Even if we had some doubt on the
subject, we would resolve it in favor of coverage. <u>See</u> <u>Grinnell</u>
<u>Mut. Reinsurance</u>, 697 F.3d at 585 (under Illinois law, ambiguous
provisions are construed in the insured's favor).

The main point of contention between the parties concerns how the Optional Property Coverages interact. The Money and Securities coverage expressly insures "bullion," but does not cover bullion theft by an employee pursuant to the "Criminal, Fraudulent, or Dishonest Acts" exclusion. The "Jewelry Exclusion" supports the inference that "gold" is covered by the Employee Dishonesty coverage. (See Change Endorsement Jewelry Exclusion, attached as part of the Policy at Dkt. #1-2, p.19 (stating that the Policy does not cover "gold," among other property, "*except under the employee dishonesty coverage*") (emphasis added).) But the Optional Coverages Section, which includes the Employee Dishonesty coverage, incorporates the general "bullion" exclusion. (See Policy, Dkt. #1-1, p. 48 ("All Optional Property Coverages are subject to all of the 'terms' applying to the Common Policy Conditions and Property Coverages of this policy, except as provided below.").) Costello argues that the "bullion" coverage in the Money and Securities section should be imputed to the Employee Dishonesty section, thereby creating coverage for bullion theft by a store employee. We disagree. Each Optional Property Coverage states what property is covered, subject to particular limits and exclusions. The Employee Dishonesty coverage insures "direct loss or damage to business personal property, including 'money' and 'securities,'" but does not mention bullion. The Money and Securities coverage insures "money," "securities," "bullion," and "lottery tickets."

The fact that the parties included "bullion" within "Money and Securities," but excluded it from "Employee Dishonesty," indicates that the parties purposefully excluded coverage for bullion theft by an employee.  See, e.g., Wilson v. Career Educ. Corp., 729 F.3d 665, 678 (7th Cir. 2013) ("Where CEC was explicit about the right to withhold bonuses in one situation but not in another, it is more reasonable to interpret that silence as intentional, consistent with the principles that a contract must be interpreted as a whole and that the expression of one or a few specific items (such as conditions to defeat a bonus) often implies the exclusion of others.") (Illinois law).  The fact that the Policy covers "gold" in some forms (e.g., jewelry) and not others (bullion) does not render it ambiguous.  (Cf. Def.'s Mem. at 5.)  The parties used two different terms ("gold" and "bullion") within the same section ("Property Not Covered"), indicating that they did not intend one term to subsume the other.  Indeed, it would have been unnecessary to create an express bullion exclusion if the term "gold" in the Jewelry Exclusion encompassed bullion.  See Young v. Verizon's Bell Atlantic Cash Balance Plan, 615 F.3d 808, 823 (7th Cir. 2010) ("Contract interpretations should, to the extent possible, give effect to all language without rendering any term superfluous . .

. .") (Illinois law). In sum, we conclude that the Policy does not cover Knaack's bullion theft.[4]


## C. Scrap Gold

In its complaint, Jewelers Mutual seeks a declaration that there is "no coverage" for the losses that Costello claims in its proof of loss. (See Compl. ¶ 43.) This relief would encompass *both* bullion *and* "scrap gold." In the alternative, it seeks a declaration that any claim for "scrap gold" is moot because its $50,000 payment exceeds the $20,000 in losses that Costello attributes to the theft of that property. (Id.) Jewelers Mutual does not argue in its summary judgment materials that the Policy does not cover "scrap gold." Instead, in a footnote, it presses its alternative argument that any claim for scrap gold is moot. (See Pl.'s Mem. at 3 n.1.) We conclude that Jewelers Mutual has waived any argument that losses attributable to scrap-gold theft are not covered. We agree, however, that the issue is moot given the $50,000 payment.[5]

## D. Jewelers Mutual is Entitled to Summary Judgment on Costello's Remaining Counterclaims

---

[4] In light of this holding, it is unnecessary to address the parties' arguments about whether there were one or more "occurrences" as the Policy defines that term.

[5] Jewelers Mutual has not asked the court to enter an order compelling Costello to refund the portion of the payment that exceeds Costello's claim for scrap-gold theft. We express no opinion about whether Jewelers Mutual would be entitled to such an order.

In light of the foregoing discussion, Jewelers Mutual is entitled to summary judgment on Costello's claim for breach of contract (Count II).  It is also entitled to summary judgment on Costello's makeweight claim for "vexations or unreasonable" denial of insurance benefits (Count III).  Even if we had disagreed with Jewelers Mutual's interpretation of the Policy, it was clearly made in good faith based upon the Policy's express language.

## CONCLUSION

The plaintiff's motion for summary judgment (18) is granted. The defendant's motion for summary judgment (12) is denied.  The court will enter an appropriate judgment order declaring that the Policy does not cover Costello's claim for bullion theft.


DATE:          January 23, 2014

ENTER:         _____

               John F. Grady, United States District Judge